ADJUDGED IN

# THE PREROGATIVE COURT

## OF THE STATE OF NEW JERSEY.

### OCTOBER TERM, 1870.

ABRAHAM O. ZABRISKIE, ESQ., ORDINARY.

BRAY and wife, appellants, and NEILL's EXECUTRIX, respondent.

1. An account of the personal estate of an intestate, on application to an Orphans Court for sale of lands to pay debts, which refers only to an inventory filed in another state, is not a compliance with the statute, unless a copy of the inventory is annexed.

2. A final account settled in the probate court of another state, relating only to the personal estate of the decedent, is not evidence against devisees of the real estate in this state, who had no interest in the personal estate, and would not have been heard on the settlement of that account.

3. On application for sale of lands to pay debts, it is necessary that the Orphans Court should ascertain and determine the amount of the deficiency of the personal estate required to be raised by the sale of lands.

4. On such application it is necessary that the court should ascertain and decide that the personal estate which had come to the hands of the applicant, had been applied to the payment of debts.

5. When the applicant had received and sold lands devised by the testator, and which ought to contribute to the payment of debts, it is error to order lands of other devisees to be sold for the payment of debts paid by the applicant, without deducting the proportion the applicant ought to pay.

6. Lands devised to a widow in lieu of dower, if accepted by her, are liable to their proportion of the debts of the testator.

7. Where an executrix to whom lands are devised for a certain time, neglects to apply for an order for sale to pay debts until her estate expires, and in the meantime enjoys the estate, and takes the rents and profits of it, she must account for the value of the estate so enjoyed, and deduct its fair proportion of the debts in ascertaining the amount to be raised from the other devisees.

8. If the day to show cause is less than two months from the date of the rule even by one day, the order to sell is erroneous, and must be set aside on appeal. And as this rule is the proceeding by which jurisdiction is acquired, this defect appearing on the record, would avoid the proceeding collaterally.

———

This was an appeal from an order of the Orphans Court of the county of Camden, made July 27th, 1868, directing part of the real estate of William Neill to be sold for the payment of his debts, and from an order made by the same court, October 12th, 1868, discharging a rule to show cause why the order to sell lands should not be set aside, granted on application of the appellant, October 9th, 1868.

*Mr. P. L. Voorhees*, for appellants.

*Mr. Carpenter*, for respondent.

THE ORDINARY.

William Neill, father of the appellant Catharine Bray, died in Philadelphia where he resided, March 27th, 1854. He left a will, of which he made his wife, the respondent, sole executrix. This will was proved and admitted to probate in Philadelphia, April 4th, 1854, and in the county of Camden in this state, August 5th, 1854. An inventory of the personal estate was duly exhibited in the office of the Register of Wills, in Philadelphia, May 8th, 1854; and the final account of the personal estate rendered by the executrix, under oath, December 30th, 1854, before the Register, was then or afterwards (when, does not appear,) allowed and decreed by the Orphans Court of the city and county of

Philadelphia. That court is the proper tribunal for such allowance, and its decree upon this matter would be, in the courts of Pennsylvania, conclusive, except upon appeal. By this account, it appeared that a balance of $1693.06 was due to the accountant, it being the excess of debts and expenses of administration paid by her above the assets which she had received.

The will bequeathed three specific legacies, and gave the remainder of his personal property on the premises which he occupied (a hotel in the city of Philadelphia) for the use of his wife while she occupied the hotel, and afterwards to his wife and daughter, Mary Ann. It devised one parcel of land in Camden county, to his son Robert, another parcel at Gloucester to his wife in fee, and the rest of his lands at Gloucester to his wife for her use and the maintenance of his minor children until the youngest should arrive at twenty-one years of age, and then to all of his children equally in fee.

Robert sold and conveyed his lot in fee, in 1860, and the respondent sold and conveyed her lot in fee, March 11th, 1868, since the decree in the Orphans Court at Camden.

The lands directed to be sold are those of which the use is given to the respondent during the minority of testator's children, and which, as well as the lot devised to her, she had occupied since testator's death, and of which she had received the income.

The application to the Orphans Court for sale was made May 28th, 1867, after the youngest child would have been twenty-one, and after the respondent's estate in these premises had terminated. The rule to show cause was granted on the day of application, and was to show cause on the 27th day of July, one day less than two months from the date of the order.

A copy of the account allowed in the Orphans Court of Philadelphia was annexed to the petition. The account of the estate exhibited under oath at the application, was annexed to the petition, and stated that "there is no personal estate, the same having been exhausted in the payment of

debts, as per account in Orphans Court of Philadelphia annexed;" and that the account of the debts was the balance found due by said account and decree, $1643.66, with interest from April 6th, 1855, which may be presumed to be the date of the decree, which nowhere else appears in the proceedings. The account, as allowed, charges the respondent with $4000.16 as the amount of the inventory, and $882 as the value of two hundred and eighty gallons of brandy not in the inventory. But the inventory was not annexed to the petition or account, and though among the papers in this court, it does not appear that it was before the court below at the making of the order.

The first objection which I shall consider is, that there was not exhibited to the Orphans Court on application for the rule to show cause, such account of the personal estate and debts, under oath, as is required by the statute. *Nix. Dig.* 855, § 15. The account annexed to the petition certainly does not comply with the statute; it says, there is no personal estate, the same having been exhausted in payment of debts. This might be said in all cases, as the statute requires that the personal estate shall all be first administered. The statute can only be complied with by a full statement of all the personal estate which the decedent left at his death, whether administered or unadministered, collected or not collected, and even if part has been destroyed by fire, or lost, without default of the executor. But this statement under oath refers to the account allowed in Philadelphia, a copy of which is annexed; such reference would be sufficient, if that contained a sufficient account of the personal estate. But on examination it only refers to an inventory filed there, except as to the brandy. As that inventory was not annexed, the question arises, is such reference a sufficient account? By the practice in our Orphans Courts for nearly ninety years, and the forms of proceeding as given in all the books of precedents, from *Griffith's Treatise*, in 1797, to *Nixon's Forms*, a reference to the "inventory" or "appraisement" for the amount of the personal estate, is taken as

sufficient. But this, in all these cases, must mean the inventory required by our law, and exhibited and recorded in the office of the surrogate or clerk of the Orphans Court and therefore, in legal contemplation as well as in fact, before the Orphans Court. A reference to an account on file in the office of the clerk in chancery, or in a probate office in Nevada or Alaska, or in the vaults of the Bank of England, would not much enlighten the court or those interested in opposing the sale. This account, though nearer at hand, is no better until supplied. Nor does the oath state, either directly or by implication, that the inventory or account contained all the personal estate of the testator. It would seem that the chattels specifically bequeathed are in neither; and it may be that in Pennsylvania such specific legacies, if delivered, need not be included in the final account of the general estate. The account of debts and credits does not state that the debts for which the personal estate was paid out were the debts of the testator; and the charges for rent and gas paid, in the account allowed, at long intervals after the testator's death, may have been for rent of the leased premises occupied by him, bequeathed to the respondent as part of the residue of the personal estate, for which she, and not the estate, would be liable, and which would be readily allowed on an *ex parte* account if he had signed a lease extending over that time. I do not think the account exhibited is sufficient for either of the objects for which it is required, to show the court whether the rule to show cause should be granted, or those interested in the lands whether there was, in fact, ground for the application, so that they could intelligently determine whether they should oppose it or not.

The account stated in Philadelphia is binding and conclusive there, and must be equally so in this state. But it is like other judicial proceedings, binding only on those who are or could be parties to it. It was an account of the *personal* estate, in which the appellants had no interest. The only bequest to Catharine was the specific one of a silver

soup ladle, which was not in the account. As devisee of the real estate, she could not be heard on that account. She had no interest in the personal estate there in question. That she had an interest because the account could be offered in evidence on the application for sale of lands, assumes the question. In the account as it stood primarily she had no interest, and could not intervene because incidentally it might affect her. Else the holder of a note not yet due, might intervene in a suit by a third person against the maker, because such recovery might sweep away the property and leave nothing for his debt. All persons interested in the personal estate as creditors, legatees, or next of kin, were or could have become parties to such account, and are bound and concluded by it, but no others are. There being nothing to show what persons are considered as parties to this account by the law of Pennsylvania, I must determine that question upon general principles applicable to such cases, and by analogy to the law of this state.

The next reason is, that the Orphans Court did not determine what was the amount of the deficiency of the personal estate to be raised by the sale of the lands. It is not directly required by the statute that the court shall ascertain and adjudge what is the amount of the deficiency. But it is required to determine whether the whole or only a part, and then what part of the decedent's lands, is necessary for the payment of his debts. It cannot determine these matters without determining what that deficiency is; and therefore, by clear implication, it is required to determine the amount. When land is sold in different parcels, the sale should be terminated whenever the required amount is realized, although the order may include more lands; and in this case it is particularly necessary, as the order directs that after the sale of the first two tracts there shall be sold, thirdly, *so much of* a tract described, containing nineteen lots, as shall be necessary to pay off *the said debts* of the testator, although the debts have not been ascertained. The Supreme Court, in the opinion delivered in *Stiers* v. *The*

*Executors of Stiers, Spencer* 54, establish this doctrine; that was on an order to sell lands for payment of debts; the cause was removed from the Orphans Court to the Supreme Court, by certiorari, and their decision is authority in this court, to which the revision of these orders was transferred by the present Constitution. The Chief Justice says: "In my opinion the order is erroneous, because the Orphans Court had not ascertained the extent of the deficiency, nor designated in the order the sum to be raised by a sale of the lands."

The third reason is, that the court did not ascertain *and decide* that the personal estate which had come to the hands of the executrix, had been applied to the payment of debts. The statute (*Nix. Dig.* 856, § 21,) provides that no sale shall be ordered by the Orphans Court until the personal estate shall have been so applied; of course the court must examine into and decide this question before the order is made. It does not appear that they did either examine or decide it. It is as much a pre-requisite to the order, as that it should appear that the personal estate was insufficient for the payment, and it is as necessary that it should appear in their proceedings. An order simply for the sale of the lands, without it appearing on the face of the proceedings that the personal estate had been adjudged insufficient, would be erroneous. It is equally so for the omission to determine as to its application.

This was expressly laid down and decided by Chancellor Isaac Williamson, in *Wilmurt's Adm'rs* v. *Morgan*. In an opinion quoted by Chief Justice Ewing, in 4 *Halst.* 342, he says: "It was the duty of the court to examine and *ascertain* that the personal estate which had come to the hands of the administrator, had been applied by them in the course of administration, before making the order for sale." And Chief Justice Ewing, in delivering the opinion of the court in *The State* v. *Conover*, 4 *Halst.* 338, says: "It is the plain duty of the court, as a preliminary to an order for sale, to ascertain and *decide* not only that the personal estate is

insufficient to pay the debts, but that such part thereof as may have come to the hands of the executor or administrator *has been* applied for that purpose." In *Stiers* v. *Stiers' Ex'rs*, above referred to, the Supreme Court re-affirmed the doctrine. In this case the court did not examine into and decide the question. But on the other hand, it is apparent that the specific legacies had *not* been applied to the payment of debts. It may not be necessary by the law of Pennsylvania in administration of personal assets, but the law of this state requires it before an order can be had to sell lands.

Another reason is, that the tract devised to the respondent should be made to contribute its share of the debt, and the order to sell should have been for the residue only. The statute, section 16, (*Nix. Dig., p.* 856) requires such contribution. It does not say that it shall be made for lands devised to the executor, upon an order for sale obtained by him; but it is just and equitable that it should be so made, especially when as here the whole of the money to be raised will go to the applicant herself. Great injustice might be done if it was omitted, and without any other consideration it avoids the necessity of further litigation; an object which the law always favors. This was held in the case of *Liddel* v. *McVickar*, 6 *Halst.* 44, a case in this respect like the present. The administrator had paid all the debts, and conveyed away his share of the lands; and the court held that no order could be made to sell the lands of the other heirs to reimburse to him the share of the debts paid by him, which should rest upon the land devised to him.

It is no answer to this, that the land devised to her was in lieu of her dower; it was in lieu of dower, but she had the option to accept of it, or to renounce it, and claim her dower in the whole estate. She knew all the facts, and the amount of debts, and the situation of the estate, and made her election, and no doubt acted wisely. She retained the tract, and ever since the decree in this case has affirmed her election by selling it, and has thus put it out of the

power even of a court of equity to relieve her from the election made under a mistake, by permitting her to renounce the devise to her.

Again: although it is settled that an executrix has a right to have lands sold to reimburse her for moneys advanced out of her own funds for payment of debts, and also in a proper case is entitled to interest on such advances, yet this is not a proper case to allow interest. The respondent has laid out of these advances by her own laches and fault. She alone had the power to apply for sale; her final account was settled April 6th, 1854, which then showed as clearly as it does now, the balance due her, and that there was no personal assets to pay it. The use of the lands decreed to be sold was given to her for about thirteen years. She took the rents and income for that time, and then applied for a sale of the lands to pay both principal and interest of the debt to her. The delay was for her own benefit only, and at the expense of the other devisees. She is not bound to account for these rents and profits to any one (except by way of contribution), but as a sale in 1855 would have paid the debt, and stopped the interest, she must not be allowed any interest on the advance so made.

The value of her estate for years in these lands which she accepted and has enjoyed, must contribute to the debt according to its value, as well as the reversion of testator's children; and in estimating that value, it will be equitable to deduct the interest of this advance from the annual income or value. The order cannot be said to be erroneous on this ground; it does not direct that any interest shall be paid, or in fact any particular amount of principal. But interest is claimed in the account exhibited, and the order is understood by all parties as intended to provide for the interest. These facts show the necessity of adhering to the rule established by the Supreme Court, that the amount of the deficiency for which the sale is ordered should be ascertained and settled in the order.

The want of one day of the two months required in the

order to show cause, is a fatal error. The Orphans Court is a court of general jurisdiction, and has clearly jurisdiction of the subject matter, that is, of the sale of lands for payment of debts. But it must have, besides. jurisdiction of the case, and it must acquire it in the way prescribed by the statute which gives the jurisdiction. That in this case requires that the day for hearing shall be two months from the date of the rule. The parties in these cases have no personal notice; they must get notice by hearing of the rule and advertisement, and are entitled to every day of the time allowed by law. There is nothing to cure the defect; the appellants had no knowledge of the application until after the decree was made. Their application to open the decree was no appearance in the cause; it was, like this appeal, an attempt to have the decree already made set aside, that they might appear and be heard. Were this the only ground, the order for sale must be set aside. This question is one of jurisdiction; most of the others could not be taken advantage of collaterally as against a purchaser to affect his title, but only on appeal to set aside the decree below. But if the Orphans Court did not acquire jurisdiction of the case, and that want of jurisdiction appears, as it does here, on the face of the record, the whole proceedings would be *coram non judice* and invalid.

The order must be set aside.